**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
       jwilner@bursor.com
       jglatt@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA SCHOEPS and MARLEY STUBBLEFIELD, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>DAVIDS NATURAL TOOTHPASTE, INC.,<br><br>                Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Alexandra Schoeps and Marley Stubblefield ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Davids Natural Toothpaste, Inc. ("Defendant").

## NATURE OF THE ACTION

1.     Plaintiffs bring this class action lawsuit on behalf of themselves and other similarly situated consumers ("Class Members") who purchased Davids Antiplaque & Whitening Fluoride-Free Premium Natural Toothpaste (the "Product").[1]

2.     The demand for toothpaste made with clean, natural ingredients has grown rapidly. Indeed, McKinsey & Company estimated that U.S. consumers in 2022 spent more than $450 billion on wellness products and predicted that number would continue "growing at more than 5 percent annually."[2]

3.     Accordingly, Defendant's Product and corresponding advertising aims to capitalize on consumers' desires for synthetic-free hygiene products.  As the Product's description on Target.com explains, "Davids was founded with one vision … creat[ing] the highest quality premium natural toothpaste with a commitment to … the sustainability of your health."[3]

4.     In fact, as the company's founder, Eric Buss, told the Orange County Register, "[o]ne evening … I was at home, and I was looking on my tube of toothpaste at all the ingredients. What are all these funny names? What is all this stuff that I'm putting in my mouth twice a day? And out of curiosity, I started Google searching, and it didn't really take too long to figure out that a lot of the ingredients really aren't that great for you."[4]

---

[1] Discovery may reveal that additional of Defendant's products are within the scope of this Complaint.  Accordingly, Plaintiffs reserve the right to include additional items identified through the course of discovery.

[2] Shaun Callaghan & Warren Teichner, et al., *Still Feeling Good: The US Wellness Market Continues to Boom*, MCKINSEY & COMPANY (Sept. 19, 2022), *available* https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/still-feeling-good-the-us-wellness-market-continues-to-boom (last accessed Feb. 13, 2024).

[3] Target, *Davids Antiplaque & Whitening Fluoride-Free Premium Natural Toothpaste – Peppermint*, available https://www.target.com/p/davids-antiplaque-38-whitening-fluoride-free-premium-natural-toothpaste-peppermint-5-25oz/-/A-76581782 (last accessed Feb. 13, 2024).

[4] Samantha Gowen, *Small California Business Owner Takes on the Titans of Toothpaste,* ORANGE COUNTY REGISTER (Feb. 8, 2022) *available* https://www.mercurynews.com/2022/02/08/a-murrieta-tale-of-david-vs-goliath-only-this-time-its-over-toothpaste/ (last accessed Feb. 14, 2024).

5. Unfortunately for consumers, however, despite the brand's inspiration, the Product does contain ingredients with "funny names" that "really aren't that great for you." Specifically, perfluoroalkyl and polyfluoroalkyl substances, commonly known as "PFAS." PFAS chemicals are "large, complex group[s] of synthetic chemicals"[5] that "break down slowly, if at all."[6] Because PFAS chemicals do not break down quickly, if at all, these chemicals can build up in the body after repeated exposure and have been linked to "increased cholesterol, changes in the body's hormones and immune system, decreased fertility, and increased risk of certain cancers."[7]

6. Alarmingly, a Department of Defense ELAP-certified laboratory, which was commissioned to test the Product, found that it contained over 6 parts per billion of (PPB) of PFAS. For reference, when researchers found 250 parts per trillion PFAS in kale, **over 20 times less** than what was found in the Product, they described being "stunned" by the "high levels" of the compounds.[8]

7. Accordingly, Plaintiffs bring their claims against Defendant individually and on behalf of classes of all others similarly situated for (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.;* (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq;* (4) Fraudulent Omission or Concealment; (5) Fraudulent Misrepresentation; (6) Negligent Misrepresentation; (7) Unjust Enrichment; and (8) Breach of Express Warranty.

## PARTIES

8. Plaintiff Alexandra Schoeps is a natural person and a citizen of California who resides in Napa, California. Plaintiff Schoeps purchased the Product in August 2023, online at

---

[5] Nat'l Institute of Env't. Health Sci., *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, (Dec. 4, 2023) available https://www.niehs.nih.gov/health/topics/agents/pfc (last accessed Feb. 13, 2024).

[6] *Id.*

[7] Michigan OFAS Action Response Team, *EGLE Classroom: Introduction to PFAS,* available https://www.michigan.gov/pfasresponse/faq/categories/pfas-101 (last accessed Feb. 13, 2024).

[8] *See* Tom Perkins, *New Report Finds Most US Kale Samples Contain 'Disturbing' Levels of 'Forever Chemicals,'* THE GUARDIAN (June 30, 2023) *available* https://www.theguardian.com/environment/2023/jun/30/kale-pfas-forever-chemicals-contamination (last accessed Feb. 13, 2024).

1    Target.com from her home in Napa.  Prior to her purchase, Plaintiff Schoeps reviewed the

2    Product's marketing on its packaging and on the Target webpage and purposefully purchased the

3    Product because she understood Defendant's representations and warranties to mean that the

4    Product was free of harmful toxicants.

5            9.      Plaintiff Schoeps remains interested in purchasing natural toothpaste from

6    Defendant that is safe for her use.  However, she is unable to determine if the Product is actually

7    safe or if it contains synthetic, toxic chemicals.  As long as the Product is marketed as being "made

8    with naturally sourced and naturally derived ingredients" made for the "sustainability of your

9    health," when it contains known harmful PFAS chemicals, Plaintiff Schoeps will be unable to

10   make informed decisions about whether to purchase Defendant's Product and will be unable to

11   evaluate the different prices between Defendant's Product and competitors' products.  She is

12   further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is

13   compelled to ensure that its marketing is accurate, non-misleading, and its Product is toxin free.

14   Plaintiff Schoeps would like to purchase the Product again in the future.  Had she known the true

15   nature of the product, Ms. Schoeps would have paid substantially less for it, if anything at all.

16           10.     Plaintiff Marley Stubblefield is a natural person and a citizen of California who

17   resides in Hayward, California.  Plaintiff Stubblefield purchased the Product in October 2022 from

18   Amazon.com from her home.  Prior to her purchase, Plaintiff Stubblefield reviewed the Product's

19   marketing on its packaging and on the Amazon webpage and intentionally purchased the Product

20   because she understood Defendant's representations and warranties to mean that the Product was

21   free of harmful toxicants.

22           11.     Plaintiff Stubblefield remains interested in purchasing natural toothpaste from

23   Defendant that is safe for her use.  However, she is unable to determine if the Product is actually

24   safe and free of synthetic, toxic chemicals.  As long as the Product is marketed as being "made

25   with naturally sourced and naturally derived ingredients" made for the "sustainability of your

26   health," when it contains known harmful PFAS chemicals, Plaintiff Stubblefield will be unable to

27   make informed decisions about whether to purchase Defendant's Product and will be unable to

28   evaluate the different prices between Defendant's Product and competitors' products.  She is

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          3

1   further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is
2   compelled to ensure that its marketing is accurate, non-misleading, and its Product is toxin free.
3   Plaintiff Stubblefield would like to purchase the Product again in the future.  Had she known the
4   true nature of the product, Ms. Stubblefield would have paid substantially less for it, if anything at
5   all.

6       12.     Davids Natural Toothpaste, Inc., is a Delaware corporation with its principal place
7   of business in Menifee, California.  Defendant markets and sells its toothpastes, including the
8   Product, throughout California and the United States.

9   **JURISDICTION AND VENUE**

10      13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as
11   modified by the Class Action Fairness Act ("CAFA"), because at least one member of the Class is
12   a citizen of a different state than Defendant, there are more than 100 members of the Class, and the
13   aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

14      14.     This Court has personal jurisdiction over Defendant because Defendant conducts
15   substantial business within California, including in this District and purposefully avails itself to the
16   benefits of this District.  In addition, a substantial portion of the events giving rise to Plaintiffs'
17   claims occurred in this District.

18      15.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion
19   of the events, omission, and acts giving rise to the claims herein occurred in this District.

20   **FACTUAL ALLEGATIONS**

21   **A.     Exposure to PFAS Chemicals**

22      16.     "PFAS are man-made chemicals that have been used in industry and consumer
23   products worldwide since the 1940s.  They have been used to make nonstick cookware, water-
24   repellent clothing, stain resistant fabrics and carpets, some cosmetics, some firefighting foams, and
25   products that resist grease, water, and oil."[9]

26
27   [9] Agency for Toxic Substances and Disease Registry, *What are PFAS?* U.S. DEP'T OF HEALTH &
     HUM. SERVS., (Jan. 18, 2024) *available* https://www.atsdr.cdc.gov/pfas/health-
28   effects/overview.html (last accessed Mar. 11, 2024).

17.     PFAS are large, complex groups of synthetic chemicals that break down slowly, if at all, and as such can accumulate in the body once someone has ingested them.[10]  PFAS exposure can occur by using products made with PFAS or that are packaged in materials containing PFAS, among others.[11]  PFAS have been linked to "increased cholesterol, changes in the body's hormones and immune system, decreased fertility, and increased risk of cancers."[12]

18.     Indeed, in 2021, the Biden Administration, taking on "accelerated efforts to protect Americans from per- and polyfluoroalkyl substances (PFAS), which can cause severe health problems and persists in the environment once released, posing a serious threat across rural, suburban, and urban areas," announced an agency plan to "prevent PFAS from being released into the air, dirking systems, and [the] food supply … to remediate the impact of these harmful pollutants."[13]

19.     Likewise, "[p]rior studies have shown that PFAS in food packaging can leach into food and higher levels of PFAS have been found in blood testing of people who regularly eat types of foods that are typically sold in PFAS-containing packaging."[14]

20.     The level of risk presented by PFAS chemical exposure varies depending on the recipient.  In children, PFAS have been linked to "[l]ower antibody response[s] to some

[10] Nat'l Inst. of Health, *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, U.S. DEP'T. OF HEALTH AND HUM. SERVS., https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm (last accessed Mar. 11, 2024).

[11] EPA, *Our Current Understanding of the Human Health and Environmental Risks of PFAS,* (June 7, 2023) *available* https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-Risks-pfas#:~:text=Current%20research%20has%20shown%20that,may%20contain%20PFAS%2C%20including%20fish (last accessed Mar. 11, 2024).

[12] Michigan PFAS Action Response Team, *EGLE Classroom: Introduction to FPAS*, https://www.michigan.gov/pfasresponse/faq/categories/pfas-101 (last accessed Mar. 11, 2024).

[13] *Fact Sheet: Biden-Harris Administration Launches Plan to Combat PFAS Pollution*, The White House (Oct. 18, 2021), *available* https://www.whitehouse.gov/briefing-room/statements-releases/2021/10/18/fact-sheet-biden-harris-administration-launches-plan-to-combat-pfas-pollution/ (last accessed Mar. 11, 2024).

[14] Int'l Pollutants Elimination Network, *McDonald's, KFC, Burger King, Subway, Starbucks, Dunkin' Donuts, and Jolly Time Found to Have Inconsistent use of PFAS and PFAS-Free Packing,* IPEN FOR TOXICS-FREE FUTURE (Dec. 13, 2023) *available* https://ipen.org/news/single-use-food-packaging-17-countries-contains-pfas-%E2%80%9Cforever-chemicals%E2%80%9D#:~:text=Prior%20studies%20have%20shown%20that,sold%20in%20PFAS%2Dcontaining%20packaging (last accessed Mar. 11, 2024).

vaccines,"[15] thereby rending children more vulnerable to diseases they were otherwise immunized from.  In fact, the American Academy of Pediatrics has found that "[c]hildren are more vulnerable to environmental pollutants like PFAS than adults because of … lower body weight, differences in water and food intake, developing organ systems and longer lifespans during which toxic effects might manifest."[16]  Accordingly, the presence of PFAS in toothpaste, like Defendant's, is particularly alarming when used by children.  But, regardless of a person's stage in life, "[v]irtually no amount of PFAS is safe for consumption, according to the U.S. Environmental Protection Agency."[17]

21.     Toothpaste, in particular, is an effective method to introduce PFAS substances into the body.  Concerning both children and adults, the mouth and oral lining tissue are efficient entry points.  Specifically, oral absorption occurs either via the oral mucosa, which is the mucous membrane lining the "skin" inside the mouth, including the cheeps and lips,[18] or through the sublingual mucosa, which refers to the tongue and the floor of the mouth.[19]  Both areas efficiently usher particulates into the bloodstream.  This is because, in the case of absorption through oral mucosa, "[t]here are tiny blood vessels in the cheek area, allowing [] [substances] to be absorbed directly into the bloodstream, bypassing the digestive system."[20]  Similarly, particulates introduced to the sublingual mucosa are absorbed "directly in to the blood steam through the ventral surface of

---

[15] Agency for Toxic Substances and Disease Registry, *supra* note 9.

[16] Alan D. Woolf, M.D., M.P.H., FAAP, & Lauren Zajac, M.D., M.P.H., FAAP., *Report Outlines Health Effects of PFAS Chemicals in Children, Provides Recommendations for Testing*, AM. ACAD. OF PEDIATRICS (Sept. 13, 2022) *available* https://publications.aap.org/aapnews/news/22138/Report-outlines-health-effects-of-PFAS-chemicals?autologincheck=redirected (last accessed Mar. 11, 2024).

[17] Wisconsin Watch, *What Should I do about PFAS in my Water?* PBS WISCONSIN (Nov. 28, 2022) *available* https://pbswisconsin.org/news-item/what-should-i-do-about-pfas-in-my-water/#:~:text=How%20much%20PFAS%20is%20harmful,the%20U.S.%20Environmental%20Protection%20Agency (last accessed Mar. 11, 2024).

[18] Dep't. of Dermatology, *Oral Mucosal Diseases*, UNIV. OF CAL., DAVIS, *available* https://health.ucdavis.edu/dermatology/specialties/medical/oral.html (last accessed Mar. 11, 2024)

[19] Neha Narang & Jyoti Sharma, *Sublingual Mucosa As a Route for Systemic Drug Delivery*, 3 (2) INT'L J. PHARMACY & PHARM. SCI. 18-22, 18 (2011) *available* https://innovareacademics.in/journal/ijpps/Vol3Suppl2/1092.pdf (last accessed Mar. 11, 2024).

[20] Avior Nutritionals, *What is Buccal & Sublingual Absorption and Why Are They So Important?* (May 16, 2019) *available* https://www.aviornutritionals.com/what-is-buccal-sublingual-absorption-and-why-are-they-so-important/ (last accessed Mar. 11, 2024).

---

the tongue and floor of the mouth … [allowing] rapid absorp[tion]" into the system of facial veins that connects to the rest of the body's systemic circulation.[21]  In fact, "[t]he absorption of [a] drug through the sublingual route is 3 to 10 times greater than oral route and is only surpassed by hypodermic injection."[22]  Thus, the presence of PFAS in toothpaste poses a particular danger to its users because of the body's efficiency in oral absorption.

22.     As a result, there is a growing consumer demand to eliminate PFAS from various consumer products, including oral hygiene products.[23]

**B.     Defendant's Misrepresentations and Omissions are Actionable**

23.     Plaintiffs' counsel commissioned a Department of Defense Environmentally Laboratory Accreditation Program-certified laboratory to test Defendant's "Davids Antiplaque & Whitening Fluoride-Free Premium Natural Toothpaste."  The lab results showed that the Product contained over 6 parts per billion (ppb) of PFAS chemicals.

24.     These results are contrary to the warranties and representations made throughout Defendant's marketing.  Defendant's material omissions likewise harmed Plaintiffs.

25.      For example, on the product's page, Defendant makes several references to the contents of the Product as containing "naturally sourced" and "naturally derived ingredients" while concurrently representing the importance of the natural ingredients to the consumer with its on-packaging with its "sustain [] nature+you" claim prominently displayed on the box and on the tube.

---

[21] Neha Narang & Jyoti Sharma, *supra* note 17.

[22] *Id.*

[23] Elicia Mayuri Cousins, et al., *Risky Business? Manufacturer and Retailer Action to Remove Per-and Polyfluorinated Chemicals from Consumer Products*, NEW SOLUTIONS: J. OF ENV'T & OCCUPATIONAL HEALTH POL'Y (2019) 29(2), 242-65, doi: 10.1177/104829111985674.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20        26.     In fact, Defendant affirmatively represents, in no uncertain terms and in multiple

21  prominent places, that the Product is a "Premium Natural Toothpaste." [24]

22
23
24
25
26

27  [24] Target, *Daivds Antiplaque & Whitening Fluoride-Free Premium Natural Toothpaste –*
    *Peppermint*, target.com, *available* https://www.target.com/p/davids-antiplaque-38-whitening-
28  fluoride-free-premium-natural-toothpaste-peppermint-5-25oz/-/A-76581782 (last accessed Mar. 11,
    2024).



27.     Likewise, Defendant's marketing video displayed on its Target.com product page, doubles down on its purported brand position to consumers as a "high performance natural toothpaste"[25] made from natural ingredients:



---

[25] Target, *Davids Antiplaque & Whitening Fluoride-Free Premium Natural Toothpaste – Peppermint*, target.com, *available* https://www.target.com/p/davids-antiplaque-38-whitening-fluoride-free-premium-natural-toothpaste-peppermint-5-25oz/-/A-76581782 (last accessed Mar. 11, 2024).





28.     In case Defendant's affirmative—yet untrue—representation about its natural ingredients wasn't already made clear to Plaintiffs and similarly situated consumers, Defendant reiterates in the product's description that the Product "is a premium natural toothpaste made with naturally sourced and naturally derived ingredients" produced by a company "founded with one

vision … create the highest quality premium natural toothpaste with commitment to … the sustainability of your health."[26]  In fact, Defendant invites consumers to "[e]levate [their] oral care with Davids!"[27]

## Description

Davids Peppermint is a premium natural toothpaste made with naturally sourced and naturally derived ingredients, designed to whiten, remove plaque and freshen breath. Davids was founded with one vision….create the highest quality premium natural toothpaste with a commitment to sustainability…..the sustainability of nature, the sustainability of American jobs, and the sustainability of your health…nature+america+you. Elevate your oral care with Davids!

Packaging switched from plastic to paper, aluminum, steel, or glass - this product is in aluminum packaging.

29.     On its Walmart.com product page[28], Defendant repeats the same, affirmative but untrue claims to induce consumers to purchase the Product:



---

[26] Target, *supra* note 25.

[27] *Id.*

[28] Walmart, *Davids Natural Toothpaste, Whitening, Antiplaque, Fluoride Free, SLS Free, Peppermint,* Walmart.com, *available* https://www.walmart.com/ip/Davids-Natural-Toothpaste-Whitening-Antiplaque-Fluoride-Free-SLS-Free-Peppermint-5-25-OZ-Metal-Tube-Tube-Roller-Included/130740368 (last accessed Mar. 11, 2024).



30.     And, just like on its Target page, Defendant again informs consumers that its Product is "simply the highest quality and best natural toothpaste made from naturally sourced and naturally derived ingredients to safely whiten teeth, fight plaque, and freshen breath."[29]

Product details

Davids is a premium natural toothpaste, made in California, with a focus on sustainability. Davids is simply the highest quality and best natural toothpaste made from naturally sourced and naturally derived ingredients to safely whiten teeth, fight plaque, and freshen breath. With regular brushing, naturally derived micro abrasives assist to reduce plaque and surface stains creating whiter teeth and a clean and healthy mouth. Baking soda (sodium bicarbonate) is used to neutralize the acids in your mouth, which further reduces the bacteria causing plaque. Birch Xylitol is added to promote good oral hygiene. Premium mint oil from various mint growing regions across the USA are blended together to create an amazing mint flavor and freshen breath. Davids went out of their way to use 98% USA Origin Ingredients to produce the highest quality toothpaste possible and to support USA jobs! Discover why so many people are switching to Davids!

31.     Despite Defendant's repeated, affirmative claims that its Product is made from natural ingredients, safely whitens teeth, and is made with the consumers' health and safety in mind, to induce health-conscious consumers to purchase its Product, Defendant omits the fact that its Product contains high levels of toxic, harmful PFAS chemicals, efficiently absorbed through the mouth.

32.     Plaintiffs and the members of the Classes bargained for a product that is made of natural ingredients and were thus deprived of the basis of their bargain when Defendant sold them a Product affirmatively representing as such, despite containing high levels of toxic PFAS substances, thereby exposing them to the risk of negative health consequences.

33.     No reasonable consumer would expect the Product, marketed prominently as a "natural toothpaste" made with "naturally derived ingredients to safely whiten teeth" with an

---

[29] Walmart, *supra* note 28.

emphasis on the "sustainability of your health" to contain toxic synthetic ingredients like PFAS. Accordingly, Plaintiffs and the members of the Classes suffered economic injury as a result of purchasing the Product.

34.     In addition, because the facts concern a critical safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiffs and the members of the Classes the true standard, quality, and grade of the Product and to disclose the Product contained substances known to have adverse health effects.  Defendant also had a duty to disclose because of its exclusive and/or superior knowledge concerning the true nature and composition of the Product as the owner, manufacturer, producer, marketer, and seller of the Product.  Nonetheless, Defendant concealed this material information and affirmatively warranted the opposite.

35.     Although Defendant is in the best and exclusive position to know the true composition and contents of its Product, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

36.     **WHO:** Defendant Davids Natural Toothpaste Inc.

37.     **WHAT:** Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Product contains PFAS—which are widely known to have significant health repercussions.  Thus, Defendant's conduct deceived Plaintiffs and the members of the Classes into believing that the Product is natural, non-toxic, and safe for oral use when it is not.  Defendant knew or reasonably should have known that this information is material to reasonable consumers, including Plaintiffs and members of the Classes, when they make their purchasing decisions, yet it continued to pervasively and affirmatively warrant and represent that the Product was of a quality and character that it is not.

38.     **WHEN:** Defendant made material misrepresentations and omissions during the putative class periods, including prior to and at the time of Plaintiffs and Class Members purchased the Product, despite its knowledge that the Product contained PFAS.  Plaintiffs viewed the packaging and advertising of the Product online at purchasing and viewed the representations and warranties made by Defendant, understanding them to mean precisely what they say—that the

Product is a premium natural toothpaste, made from natural ingredients, from a brand concerned about consumer health.

39.     **WHERE:** Defendant's marketing messages were uniform and pervasive throughout California and the United States, carried through material misrepresentations, warranties, and omissions on its labeling, packaging, and online marketing materials.

40.     **HOW:** Defendant made material misrepresentation and omission of fact regarding the Product by representing and warranting that the Product was made of "naturally sourced" and "naturally derived" ingredients and was a premium "natural toothpaste" concerning the health and safety of the consumer.

41.     **WHY IT IS FALSE:** Defendant made material representations and warranties that its Product is a premium "natural toothpaste" made from "naturally derived" and "naturally sourced" ingredients and made with a focus on the consumer's health and safety.  However, Defendant, on its labeling, using green imagery, and on its marketing, omitted material disclosures to consumers that the Product contained harmful PFAS chemicals.  Thus, Defendant's affirmative representations that the Product is a premium "natural toothpaste" safe for oral use runs contrary to the Product's inclusion of toxic PFAS chemicals.  Thus, Defendant's repeated representations and omission of material information about the contents and character of its Product render its marketing false and misleading.

42.     **Injury:** Plaintiffs and the members of the Classes purchased, and paid a premium, or otherwise paid more for the Product they otherwise would not have—or would have paid substantially less for—had they not reasonably relied on Defendant's material, affirmative representations, warranties, and corresponding omissions.

## CLASS ALLEGATIONS

43.     Plaintiffs bring this matter on behalf of themselves and all similarly situated in the following class (the "Nationwide class"):

> All natural persons in the United States who purchased the Product, and all substantially similar products, from April 1, 2020, to present.

44.     Plaintiffs also bring this matter on behalf of themselves and all similarly situated in the following class (the "California subclass") (collectively, the "Classes"):

> All natural persons in California who purchased the Product, and all substantially similar products, from April 1, 2020, to present.

45.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

46.     Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more Subclasses, in connection with their motion for class certification, or at any other time, based on *inter alia*, changing circumstances and new facts obtained.

47.     **Numerosity:** Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of people who purchased the Product and substantially similar versions of the Product, who have been injured by Defendant's false and misleading representations.  While the exact number of members of each Class is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery from records maintained by Defendant and its agents.

48.     **Commonality and Predominance:** The questions of law and fact common to the classes which predominate over any questions which may affect individual class members include, but is not limited to:

(a)     Whether Defendant's Product contains PFAS;

(b)     Whether Defendant represented and warranted that the Product was natural and free of harmful chemicals;

(c)     Whether Defendant breached those representations and warranties;

(d)     Whether Plaintiffs and Class Members reasonably relied on Defendant's representations, warranties, and omissions;

(e)     Whether Defendant's conduct violated California's consumer protection statutes;

     (f)     Whether Defendant's conduct amounted to violations of the common law; and

     (g)     Whether the knowledge of the presence (or risk thereof) of PFAS in the Product would be material to a reasonable consumer.

49.     **Typicality:** The claims of the named Plaintiffs are typical of the claims of the members of the Classes because the named Plaintiffs, like other members of the Classes, purchased the Product and Defendant's substantially similar Products, relying on the representations and warranties made by Defendant on its packaging and online that the Product was free of harmful toxins and made specifically with the consumer's health in mind.

50.     **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiffs are able to fairly and adequately represent the interest of the Class.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Class or additional claims as may be appropriate.

51.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contracts, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presented fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the

Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws.

**CAUSES OF ACTION**

**COUNT I**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750,** *et seq.*
**(On Behalf of the Nationwide Class and California Subclass)**

52.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

53.    Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

54.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…"

55.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if they are of another."

56.    Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them as advertised."

57.    Defendant violated Civil Code §§ 1770(a)(5), (a)(7), and (a)(9) by holding out the Product as being made with natural ingredients designed with the consumer's health in mind when the Product contains high levels of toxic PFAS chemicals.

58.    The Product is not healthy for the consumer, nor comprised of only natural and naturally derived ingredients because the Product contains harmful PFAS chemicals.

59.    Defendant failed to disclose that the Product contains PFAS.

60.    Defendant has exclusive and/or superior knowledge of the health risks of the Product, which was not known to Plaintiffs or the Class.

61.    Defendant made misrepresentations to Plaintiffs and members of the Classes while suppressing the true nature of the Product. Specifically, by displaying the Product and describing the Product as healthy and made with natural and naturally derived ingredients, including on the product packaging, on its website, and in its marketing, without disclosing that the Product contain

toxic PFAS chemicals.  As such, Defendant affirmatively misrepresented the Product despite its knowledge that the Product was not as advertised.

62.     Plaintiffs and the Classes have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Product that they otherwise would not have incurred or paid and were unknowingly exposed to a significant and substantial health risk.

63.     On February 16, 2024, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to the presence of PFAS in the Product, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.

64.     Defendant failed to remedy the issues raised by the notice letter.

65.     Pursuant to Civ. Code § 1780, Plaintiffs and the Class seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative acts and practices; (c) restitution of all money and property lost by Plaintiffs and the Class as a result of Defendant's unlawful conduct; (d) punitive damages; (e) any other relief that the court deems proper; and (f) attorneys' costs and fees.

**COUNT II**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et. seq.***
**(On Behalf of the Nationwide Class and California Subclass)**

66.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

67.     Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

68.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act of practice."  For the reasons discussed above, Defendant has engaged in

unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

69.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, unfair, and fraudulent conduct.

70.     Defendant has violated the UCL's proscription against engaging in **Unlawful Business Practices** by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) as well as by violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.

71.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of its Product is likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully above, thereby violating the common law.

72.     Plaintiffs and Classes reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

73.     Defendant has also violated the UCL's prohibition against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constituted "unfair" business acts and practices within the meaning of Bus. & Prof. Code § 17200, *et. seq.,* as the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

74.     There were reasonably available alternatives to further Defendant's legitimate business interest, other than the conduct described herein as noted above.

75.     Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendant's claims, nondisclosures, and misleading statements with respect to the Product, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

76.     Plaintiffs and the Classes suffered a substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the inclusion of harmful toxins in its Product.

77.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Product.

78.     Plaintiffs and the Classes had no way of reasonably knowing that the Product they purchased was not marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

79.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Classes.

80.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Classes seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiffs and other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiffs' attorneys fees and costs.

**COUNT III**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500,** *et. seq.*
**(On Behalf of the Nationwide Class and California Subclass)**

81.     Plaintiffs incorporate the foregoing allegations and if fully set forth herein.

82.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Classes against Defendant.

83.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Classes and public.  As described throughout this Complaint, Defendant misrepresented the Product as natural and made with the consumer's health

in mind when, in fact, the Product is not natural and made with the consumer's safety in mind because it includes high levels of harmful, toxic PFAS chemicals.

84.     By its actions, Defendant disseminated uniform advertising regarding the Product to and across California and the U.S.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such advertisements were intended to and likely did deceive the consuming public.

85.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the Product contains substances that pose a significant risk to the health.

86.     Defendant continues to misrepresent to consumers that the Product as safe, natural, and toxin-free when, in fact, the Product is not.

87.     In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiffs and members of the Classes based their purchasing decisions on Defendant's omitted material facts. The revenue attributable to the Product sold in those false and misleading advertisements likely amounts to millions of dollars.  Plaintiffs and members of the Classes were injured in fact and lost money and property as a result.

88.     The misrepresentations and non-disclosures by Defendant and the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et. seq.*

89.     As a result of Defendant's wrongful conduct, Plaintiffs and members of the Classes lost money in an amount to be proven at trial.  Plaintiffs and the Classes are therefore entitled to restitution as appropriate for this cause of action.

90.     Plaintiffs and Classes seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code Civ. Proc. § 1021.5; injunctive relief, and other appropriate equitable relief.

1

2

**COUNT IV**
**Fraud**
**(On Behalf of the Nationwide Class and California Subclass)**

3

91.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

4

92.     Plaintiffs bring this claim individually and on behalf of the Classes against

5

Defendant.

6

93.     Plaintiffs bring this claim under the laws of California.

7

94.     At the time Plaintiffs and members of the Classes purchased the Product, Defendant

8

did not disclose, but instead concealed and misrepresented, that the Product was natural and

9

designed as a safe toothpaste alternative, despite its high levels of toxic PFAS chemicals.

10

95.      Defendant affirmatively misrepresented the Product was of a natural composition

11

and made with the consumer's health in mind.

12

96.     Defendant also knew that its omissions and misrepresentations regarding the

13

Product was material, and that a reasonable consumer would rely on Defendant's representations

14

and warranties (and corresponding omissions) in making purchase decisions.

15

97.     Plaintiffs and Classes did not know—nor could they have known through

16

reasonable diligence—about the true nature of the Product.

17

98.     Plaintiffs and the Classes have reasonably relied on Defendant's misrepresentation

18

(and corresponding omissions) in making their purchase decisions.

19

99.     Plaintiffs and the Classes have a right to rely upon Defendant's representations (and

20

corresponding omissions) as Defendant maintained monopolistic control over knowledge of the

21

true quality of the Product.

22

100.    Plaintiffs and members of the Classes sustained damages as a result of their reliance

23

on Defendant's omissions and misrepresentations, thus causing Plaintiffs and the Classes to sustain

24

actual losses and damages in a sum to be determined at trial, including punitive damages.

25

**COUNT V**
**Fraudulent Concealment or Omission**
**(On behalf of the Nationwide Class and California Subclass)**

26

27

101.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                      22

102.    Plaintiffs bring this claim individually and on behalf of the Classes.

103.    Plaintiffs bring this claim under the laws of the State of California.

104.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Product.

105.    Defendant, acting through its representatives or agents, delivered the Product to its distributors and through various channels to consumers.

106.    Defendant willfully, falsely, and knowingly omitted material information and made material, affirmative misrepresentations regarding the quality and character of the Product as discussed throughout.

107.    Rather than inform consumers of the truth regarding the Product, Defendant misrepresented the quality of the Product as discussed herein at the time of purchase.

108.    Defendant made these material omissions and material, false misrepresentations to boost or maintain sales of the Product, and to falsely assure purchasers of the Product that its Product is a safer, natural toothpaste brand.  The omitted information and partial representations were material to consumers because the representations played a significant role in the value of the Product purchased.

109.    Plaintiffs and Classes had no way of knowing that Defendant's representations were false and misleading.

110.    Although Defendant had a duty to ensure the accuracy of the information regarding the Product because it was in exclusive knowledge of this information, the information pertains to matters of health, and Defendant did not fulfill that duty.

111.    Defendant misrepresented material facts partly to pad and protect its profits, as it saw that profits and sales of the Product were essential for its continued growth and to maintain and grow its reputation as a premier manufacturer and seller of the Product.  Such benefits came at the expense of Plaintiffs and the Classes.

112.    Plaintiffs and the Classes were unaware of these material misrepresentations, and they would not have acted as they did, had they known the truth.  Plaintiffs' and Class Members'

actions were justified given Defendant's misrepresentations. Defendant was in the exclusive control of material facts, and such facts were not known to the public.

113. Due to Defendant's misrepresentations, Plaintiffs and Classes sustained injury due to the purchase of the Product that did not live up to their advertised representations. Plaintiffs and the Classes are entitled to recover full refunds for the Product they purchased due to Defendant's misrepresentations.

114. Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being, and in part to enrich itself at the expense of consumers. Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competing products. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## <u>REQUEST FOR RELIEF</u>

115. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes, and Plaintiffs' attorneys as Class counsel;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper;

(h) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

1

## <u>JURY TRIAL DEMANDED</u>

2
    Plaintiff demands a trial by jury on all claims so triable.

3

4
Dated:  April 1, 2024
                    **BURSOR & FISHER, P.A**.

5
                    By:  ___*/s/ L. Timothy Fisher*_____
                            L. Timothy Fisher

6

7
                    L. Timothy Fisher (State Bar No. 191626)
                    Joshua R. Wilner (State Bar No. 353949)

8
                    Joshua B. Glatt (State Bar No. 354064)
                    1990 North California Blvd., Suite 940

9
                    Walnut Creek, CA 94596
                    Telephone: (925) 300-4455

10
                    Facsimile: (925) 407-2700
                    E-mail: ltfisher@bursor.com

11
                                  jwilner@bursor.com
                                  jglatt@bursor.com

12
                    *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs. Plaintiff Alexandra Schoeps resides in Napa, California.  Plaintiff Marley Stubblefield resides in Hayward, California.  I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Plaintiffs purchased the Product from their homes while in this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Product at issue to Class Members in this District.

3.      I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this April 1, 2024.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
